**Morris W. FISHER and Marcella B. Fisher, Plaintiffs–Appellants,**

v.

**1ST CONSUMERS FUNDING, INC., a Colorado corporation, and Dave Wood, Defendants–Appellees.**

No. 05CA1753.

Colorado Court of Appeals, Div. II.

Feb. 22, 2007.

Law Office of Dennis J. Sladek, Dennis J. Sladek, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Bloom, Murr & Accomazzo, P.C., Eric P. Accomazzo, William D. Thode, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge LOEB.

Plaintiffs, Morris W. and Marcella B. Fisher, appeal from the summary judgment entered in favor of defendants, 1st Consumers Funding, Inc. and its president, Dave Wood (collectively, 1st Consumers). We reverse and remand for further proceedings.

1st Consumers, a mortgage broker, offered to arrange a home mortgage refinance loan for the Fishers. According to the Fishers, 1st Consumers promised them that it would arrange a transaction with a lender that would generate an additional $5,000 in loan proceeds above the amount needed to refinance the Fishers' existing mortgage. The Fishers intended to use the extra $5,000 to make repairs to their truck, which Mr. Fisher needed for his business. 1st Consumers arranged the mortgage loan from a lender, Homecomings Financial, and the Fishers signed a promissory note to Homecomings for $74,700, secured by a deed of trust on their home.

The Fishers alleged that 1st Consumers told them that the $5,000 would be docu-mented in a separate contract, which would be sent to the title company for the closing on the refinancing. Although paperwork for the $74,700 refinancing loan arrived at the title company, no writing was ever produced documenting the $5,000 loan, and the Fishers never received the additional $5,000 they had expected.

The Fishers filed this action against 1st Consumers, seeking an award of damages and alleging claims of fraud, breach of contract, breach of fiduciary duty, intentional interference with contract, and violation of the Colorado Consumer Protection Act.

1st Consumers filed a motion to dismiss or for summary judgment as to all the Fishers' claims, based on § 38–10–124, C.R.S.2006, the Colorado statute of frauds for credit agreements. The Fishers did not produce any writing documenting the $5,000 loan in response to 1st Consumers' motion.

Treating 1st Consumers' motion as a motion for summary judgment, the district court concluded that the Fishers were debtors and that 1st Consumers was a creditor and financial institution within the meaning of § 38–10–124; that the refinancing of the home mortgage was a credit agreement; and that all the Fishers' claims relating to the refinancing would be barred by the statute of frauds. However, the district court found that there was a material issue of fact as to whether the alleged agreement for the $5,000 loan was separate from the refinancing agreement, and, on that basis, denied the motion for summary judgment.

Subsequently, the district court judge who ruled on 1st Consumers' motion recused herself, and the case was reassigned to a different district court judge.

1st Consumers again moved for summary judgment. The district court held a hearing at which the Fishers orally requested that the court reconsider the first judge's ruling that 1st Consumers was a creditor and financial institution under the statute. The district court refused to reconsider that ruling.

The district court then granted summary judgment to 1st Consumers, finding that whether one or two loans existed was imma-

terial to determining whether the statute of frauds barred the Fishers' claims. The district court found that, because all the Fishers' claims related to the home refinancing, which did not generate the additional $5,000 in loan proceeds the Fishers had anticipated receiving, their claims were barred by § 38–10–124. This appeal followed.

## I.

The Fishers contend that the first district court judge erred as a matter of law in ruling that 1st Consumers was a financial institution and creditor under § 38–10–124, and, thereafter, the second district court judge erred as a matter of law in granting summary judgment to 1st Consumers in reliance on the earlier ruling. We agree, because we conclude that § 38–10–124 bars claims between parties who are creditors and debtors, and 1st Consumers does not meet the statutory definition of a creditor.

A district court may enter summary judgment when no disputed issue of material fact exists and the moving party is entitled to judgment as a matter of law. We review summary judgments de novo. *See Grynberg v. Karlin,* 134 P.3d 563, 565 (Colo.App.2006); *Bruce v. City of Colorado Springs,* 131 P.3d 1187, 1189 (Colo.App.2005).

This case requires us to interpret Colorado's credit agreement statute of frauds, which provides in pertinent part that "no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought." Section 38–10–124(2), C.R.S.2006.

When interpreting any statute, we strive to effectuate the intent of the legislature. *Schoen v. Morris,* 15 P.3d 1094, 1096 (Colo. 2000). In doing so, we look first to the plain language of the statute. *Schoen v. Morris, supra,* 15 P.3d at 1097. "If the plain language is unambiguous, it is unnecessary to resort to rules of statutory construction." *Schoen v. Morris, supra,* 15 P.3d at 1097. "In addition, we must construe the statute as a whole to give consistent, harmonious, and

sensible effect to all its parts." *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 513 (Colo.App. 2006)(citing *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1037 (Colo.2004)).

## A.

■ The Fishers contend that the district court erred as a matter of law in ruling that 1st Consumers was a creditor and a financial institution within the meaning of § 38–10–124. We agree.

A debtor "means a person who or entity which obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." Section 38–10–124(1)(c), C.R.S. 2006. It is undisputed that the Fishers are debtors under the statute.

A credit agreement means a "contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation." Section 38–10–124(1)(a)(I), C.R.S.2006. It is also undisputed that the financial transactions between the Fishers and Homecomings involve one or more credit agreements.

Section 38–10–124(1)(b), C.R.S.2006, provides that a creditor means "a financial institution which offers to extend, is asked to extend, or extends credit under a credit agreement with a debtor."

Section 38–10–124(1)(d), C.R.S.2006, provides that a financial institution means "a bank, savings and loan association, savings bank, industrial bank, credit union, or mortgage or finance company."

A mortgage company is defined as a "company that makes mortgage loans and then sells or assigns them to investors." *Black's Law Dictionary* 1029 (8th ed.2004); *see also* § 12–61–902(6), C.R.S.2006 (Mortgage Broker Registration Act defines a "mortgage lender" as "a lender who is in the business of making mortgage loans if: (a) [t]he lender is the payee on the promissory note evidencing the loan; and (b) [t]he loan proceeds are obtained by the lender from its own funds or from a line of credit made available to the lender from a bank or other entity who regu-

larly loans money to lenders for the purpose of funding mortgage loans").

However, a "mortgage broker" is defined under Colorado law as one "who negotiates, originates, or offers or attempts to negotiate or originate for a borrower, and for a commission or other thing of value, a loan to be consummated and funded by a mortgage lender." Section 12–61–902(5), C.R.S.2006. Therefore, we conclude that a mortgage broker is not a financial institution which offers to extend or extends credit under a credit agreement, and is thus not a creditor pursuant to § 38–10–124.

Here, 1st Consumers does not argue, nor is there any evidence in the record, that it is a "bank, savings and loan association, savings bank, industrial bank, credit union, or mortgage or finance company." To the contrary, the undisputed facts demonstrate that 1st Consumers is simply a mortgage broker. In its answer to the Fishers' complaint, 1st Consumers admits that it is a mortgage broker, performing certain loan origination services for individuals. In its motion for summary judgment and in its briefs on appeal, 1st Consumers states that it is a mortgage broker and, in that capacity, arranged a mortgage loan from Homecomings for the Fishers. There is no evidence in the record that 1st Consumers ever offered to extend or actually extended credit to the Fishers.

Accordingly, we conclude that 1st Consumers is not a financial institution or a creditor within the meaning of § 38–10–124.

### B.

■ 1st Consumers nevertheless contends that, even if it is not a creditor, the Fishers' claims are barred under § 38–10–124(2), C.R.S.2006, because the statute bars claims against a third party that may be related to a credit agreement and is not limited to claims brought against creditors or debtors. We disagree.

In previous opinions interpreting § 38–10–124, Colorado appellate courts have recognized, "The General Assembly added § 38–10–124 to the statute of frauds in 1989. The section was a result of lobbying by the Colorado Bankers Association, which sought pro-

tection against suits alleging oral commitments to lend." *See Premier Farm Credit, PCA v. W–Cattle, LLC, supra,* 155 P.3d at 527 (Carparelli, J., specially concurring). The General Assembly enacted the statute "in an effort to discourage lender liability litigation and to promote certainty into credit agreements involving a principal amount of more than $25,000, in which the creditor is a financial institution." *Norwest Bank Lakewood v. GCC P'ship,* 886 P.2d 299, 301 (Colo. App.1994); *see Schoen v. Morris, supra,* 15 P.3d at 1098 ("Specifically, by enacting the credit agreement statute of frauds, the legislature hoped to curtail suits against lenders based on oral representations made by members of the credit industry."). Thus, the legislative history indicates an intent to impose a broad ban on claims arising from oral representations made by financial institutions. *Schoen v. Morris, supra,* 15 P.3d at 1099.

According to the plain language of § 38–10–124(2), the statute applies to claims relating to credit agreements between debtors and creditors. *See Premier Farm Credit, PCA v. W–Cattle, LLC, supra; see also Schoen v. Morris, supra,* 15 P.3d at 1097 (identifying the issue in that case as "whether the parties ... qualify as a 'creditor' and a 'debtor' under the statute"); *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.,* 914 P.2d 1355, 1358 n. 3 (Colo.1996)("The requirements of § 38–10–124 only apply to creditors who are financial institutions.").

Construing § 38–10–124 as a whole, and giving consistent, harmonious, and sensible effect to all its parts, we conclude that the General Assembly intended to extend the protection of that statute to debtors and to creditors who are financial institutions, and that the party "against whom enforcement is sought" under § 38–10–124(2) must be a debtor or creditor.

In that regard, we note that § 38–10–124(3), C.R.S.2006, provides that "[a] credit agreement may not be implied under any circumstances, including, without limitation, from the relationship, fiduciary or otherwise, of the *creditor and the debtor* or from performance or partial performance by or on

behalf of the *creditor or debtor*, or by promissory estoppel" (emphasis added).

This subsection strongly supports our interpretation that the statute only bars actions between creditors and debtors that are based on or related to credit agreements over $25,000 that are not in writing. *See Norwest Bank Lakewood v. GCC P'ship*, *supra*, 886 P.2d at 302 (§ 38–10–124(3) applies to the relationship between the creditor and the debtor).

The General Assembly could have expressly included mortgage brokers in the definition of a "financial institution" under the statute. However, it clearly chose not to do so. *Cf.* Mich. Comp. Laws § 566.132(3) (under Michigan's version of the credit agreement statute of frauds, " 'financial institution' means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, [or] a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act"). It is not our role to expand the definition of a "creditor" or "financial institution" beyond that clearly expressed by the General Assembly. *See Int'l Truck & Engine Corp. v. Colo. Dep't of Revenue*, 155 P.3d 640, 642 (Colo.App. 2007).

We have found no Colorado cases, nor have any been cited to us, that extend the scope of § 38–10–124 to a party who is neither a creditor nor a debtor. *See Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, *supra; Premier Farm Credit, PCA v. W–Cattle, LLC*, *supra* (Premier, as a federal production credit association, was a federally chartered bank, and was a financial institution within the meaning of the statute).

1st Consumers' reliance on *Schoen v. Morris, supra*, is misplaced. Although the supreme court in *Schoen* held that § 38–10–124 did not require a direct borrower-lender relationship between the parties, it did not alter the statutory requirement that one party be a debtor and the opposing party be a creditor. *Schoen v. Morris, supra*, 15 P.3d at 1100. *Schoen* simply holds that a third party suing on a promise does not have broader rights under § 38–10–124 than the actual promisee. *Schoen v. Morris, supra*, 15 P.3d

at 1100. In that case, the plaintiff, who was actually a lender, was deemed to be a "debtor" for purposes of § 38–10–124, and his claim against the creditor (a bank), based on oral representations, was therefore barred under the statute. Here, by contrast, we have concluded that 1st Consumers is not a creditor under the statute, and, thus, nothing in *Schoen* would dictate the conclusion that the Fishers' claims against 1st Consumers are barred by the statute.

We also reject 1st Consumers' argument that a mortgage broker is analogous to a bank loan officer. To the contrary, a loan officer is the agent of a bank and has authority to negotiate on its behalf and offer to extend credit to a debtor. On the record here, there was no evidence that 1st Consumers was the agent of Homecomings and had the authority to commit Homecomings to a financial transaction. *See Hewitt v. Pitkin County Bank & Trust, Co.*, 931 P.2d 456 (Colo.App.1995)(where borrower sued bank and its agents based on an oral credit agreement, its claims against all defendants were barred under § 38–10–124).

We therefore conclude the first district court judge erred as a matter of law in ruling that 1st Consumers was a financial institution and creditor. Because that ruling was a necessary predicate to the district court's ultimate resolution of this case, we further conclude that the district court erred as a matter of law in granting summary judgment to 1st Consumers, based on § 38–10–124.

## II.

Because of our resolution of this matter, we need not address the parties' other contentions.

The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Judge ROTHENBERG and Judge TERRY concur.